Good morning. We have four appeals that are scheduled for oral argument this morning and Judge Joe Pryor and I are delighted to have Judge Ruiz visiting with us this morning from the Southern District of Florida. We certainly appreciate your assisting us to decide these And the first case is the United States of America v. Ephren Taylor, II. John Kenney is here for the appellant. Gabriel Mendo is here for the government. And Mr. Kenney, you 3583 to modify his conditions with supervised release. We believe that two principles should guide this court's determination of the 2255 motions. The first principle is that under ETHIPA's second or successive bar, motions that are filed in the District Court during the pendency of an initial appeal with 2255 motions are not considered second or successive. It was explicitly asked this court to join with the second and third circuits in making that determination. As then Judge Sotomayor once said on the Second Circuit, for a petition to count as second or successive, there must be an adjudication that can count as the first. And up until the time that an appeal has concluded, it cannot be said that the initial petition has been finally resolved such that subsequent motions filed in the District Court count as second or successive. The Second Circuit expanded on this rule in the case Wahab, where it explains that the only appropriate way to determine whether or not a motion is second or successive is by looking to whether or not the appeal has concluded, not to the ultimate result of the appeal. What do you have to say about the Tenth Circuit's decision in Achilla v. Simmons? Tenth Circuit goes the other way and sort of says that the first circuit case runs counter to the purpose of Edput to avoid piecemeal litigation. There are two responses. The first, that is the Third Circuit explained, that's not consistent with the text of Edput because it reads an unstated qualifier into the statute that you were entitled to one full of adjudication in the District Court and that that's not consistent with understanding a finality that prevails in any other area of law. But the second point is that the Tenth Circuit and Sixth Circuit's rules fail to account for what I would consider a paradigmatic example in favor of our rule, which is imagine that an initial 2255 petitioner appeals the denial of that motion and at the same time files a motion in the District Court. Now, if that petitioner wins on appeal and the case is remanded to the District Court, under the Tenth and Sixth Circuit's rule, that motion in the District Court that was filed during the pendency of the appeal is considered second or successive, even though the first petition is now remanded back live before the District Court. And so it simply doesn't make sense under Edput's rules to say that subsequent motions are second or successive when there's still a live chance that the petitioner could win that initial appeal. The first petition could be remanded to the District Court. Proceedings could continue on it. And so we think that the Sixth and Tenth Circuits have overread Edput's emphasis on limiting piecemeal litigation and underwrite the protections that it still provides to assure that petitioners are provided procedural rights. Counsel, you mentioned the Third Circuit, Centrelli, presumably, is the case you're referring to. I'm a little more concerned about this circuit's rulings when it comes to cases like Turrell and Amadeo. We have an inherent tension here, do we not, between Rule 15 and the amendment of a 2255 and the second or successive determination by the District Court. Can you walk me through that tension? Because it seems to me that this Court, our Court, has repeatedly addressed this through Rule 15 and simply said, once the District Court has ruled in 2255, there is no vehicle for amendment. And if you look at the record, I believe that the second or successive motion, the 2255, was styled a motion to amend. That original 2255 had already been denied. There's no jurisdiction. It's up before the appellate court. How would we not essentially follow the line of cases in Turrell and Amadeo and say, there's no vehicle to amend. We don't have to reach the second or successive question. What do you think about that line of cases? Sir, I think I have three responses. The first point is about how the motion was styled. And so this Court should generally construe pro se pleadings in whatever manner would allow it to resolve the claim. So as Wahab did, Wahab says, always construe them, essentially, as a chance, even though it might be styled as an amendment, as a second, or not really second, but a chance to put all the 2255s together, if you will. Sir, the second point I make is that I think, as Wahab and Santorelli outlined, that even if this Court is not able to act on a motion to amend, that it is still holding the motion in abeyance. And the District Court here clearly believed that it did not have that option. And so if it was held in abeyance, that's consistent with this Court's previous cases saying that the District Court lacks the authority to act on the motions. But it also allows the District Court to potentially consider or resolve the claims. The third point I make is that, with regards to Rule 15, if the motion is properly considered as a motion to amend on remand, or when the District Court can properly exercise jurisdiction, that those sorts of procedural limitations would still be live. This Court's precedents, however, in Clisby, Broad, and Long, say that the District Court needs to create a record to meaningfully facilitate, uphold, or view on those questions. And so, to Your Honor's question about Rule 15, if Rule 15 is not complied with on remand, when the District Court properly exercises its jurisdiction, then it can make that ruling, and this Court can resolve it. But it should make that ruling alongside its substantive merits determinations, because going to the concern about piecemeal litigation, Clisby, Broad, and Long are designed to prevent piecemeal litigation by instructing District Courts that, even when they are going to dismiss a petition on one ground, they need to resolve the other grounds, because, essentially, Judicial Economy counsels that, on appeal, it's much harder for this Court to wade through the complicated record, this Court is further from the facts, and that the District Court is in the best position to make that initial determination. Do you think, I'm sorry. Go ahead. I was going to say, do you think this is a proper case or vehicle, given the procedural history, in that, as we sit here today, we know the COA was denied by this Court, right? In terms of the secular success of attaching, certainly, I mean, when you go back where the District Court was at the time, you would say, hold it in abeyance, follow Santorelli, or maybe Wahab, but at this point, do we think this is still the right factual pattern, even, for us to reach a secular success of question? Because in Amadeo and other cases, our Court has declined to get there because of the ruling and where it was procedurally. I still think so, Your Honor, and we recognize that here we're asking this Court to join with the Second Circuit in the point where it breaks with the Third Circuit's decision in Santorelli. And the Second Circuit considers it to be that question. Now we know the result of the initial appeal of the COA, and so should the fact that it was either affirmed or reversed play a role into whether or not the petition is second or successive? And it says the answer under the statute should be no. And I think the key reasoning that applies in this case is that Supreme Court cases like Slack have made clear that AEDPA is not trying to create traps for the unwary pro se prisoner. And if the petition is second or successive, of course, the petitioner needs to apply in the first instance in this Court. But if you tie whether or not it's second or successive to an event that post-states the initial filing, then the petitioner isn't sure, where do I file? This Court, you know, you tie it to the eventual outcome of the appeal and it hasn't been decided, then you potentially would cause pro se petitioners to either have to file on both courts and hope that they cover their bases. If they guess in one court, they could guess incorrectly based on the outcome of that ultimate appeal. And so we simply ask this Court to join with the reasoning in Pujab that under the ordinary rules of finality, at the time that it was filed, it was not second or successive, and that the eventual outcome of an appeal should not alter that determination. So if we were to agree with you on remand, what instructions would you have us give the District Court? I would remand to the District Court with instructions to consider any other procedural or substantive issues within the petition. And on remand, Mr. Taylor, I think, would again present his claims. The District Court did not touch the merits of the underlying motions in this instance. And so simply, I think, repeating the instruction from Long that the District Court should resolve all procedural and substantive issues before it so that this Court has a meaningful record for appellate review. With Your Honor's permissions, I'd like to also turn to the Section 3583 issue that's before this Court. Your Honor, Mr. Taylor's motion to the District Court to modify his conditions of supervised release made two points. The first was that he believed that his conditions were unconstitutionally vague. And the second was that he believed that the District Court should consider permanent policy statements by the Sentencing Commission. Counsel, can I ask you a little bit? In the record below, and please correct me if I'm wrong, the only line I saw in the motion that even invoked any guideline determination simply seemed like background. It read, recently the guidelines were revised to clarify the standard conditions for supervision due to criticism from multiple courts. Aside from that, the entire rest of the motion is an attack on legality, which we know under Cordero can only be raised in a 2255, not in a 3582. So I'm curious, how would you have the District Court, in terms of guidance for District Courts, look at that pleading and divine from that understanding liberal construction of pro se pleadings? But it seems difficult. And is there anywhere else in the record that would support we could pull out of that the need to run to 3553A? You're on two responses. The threshold point is that, as our briefing explains, we think Cordero was dicta on this point. Sure. We believe that there was sufficient guidance in that initial motion. And again, you're right that we're going to turn to the rule of liberal construction for pro se pleadings. But to the extent that the rest of the motion concerned the inherent legality of his conditions, it's really a request for clarification. His point is that I should be on notice, essentially, as to how I might violate these conditions. And that echoes the exact explanation from the Sentencing Commission. So I guess slightly change the premise of Your Honor's question to say it's not that he briefly mentioned the policy statements and then turned back to legality. It's that he explained that to some extent the policy statements are echoing the reasoning from those circuits, saying this is not a good system overall if, for example, with regards to full-time employment, we should give them a number of hours set certainly so that the person who's on supervised release can be absolutely sure they're not violating my conditions. And the final point I make on this, Your Honor, is that the government's briefing response only contested the illegality issue, and it did not address our argument that the district court should have considered pertinent policy statements. As this Court made clear in Hamilton v. Southland Christian School, rules of waiver and forfeiture apply against the appellee just as they do against the appellant. It's vital to ensure our system of litigation against two parties that we do not allow the appellee simply to get away with ignoring an argument that was squarely presented in an opening brief and then emphasized again in a reply. And so if Your Honor has any doubt on that question, we would recommend perhaps an unpublished opinion, ruling on the law of the case, that we reserve judgment on this question. But given the forfeiture, we will remand in this instance if this Court has any doubt on that score. Thank you. All right. Thank you, Mr. Kinney. Mr. Mendel. Good morning. District Court, Gabriel Mendel for the United States. Within a year of his conviction becoming final, Mr. Taylor filed a 2255, alleging ineffective assistance and other attacks on his conviction. In March 2019, the district court entered final judgment denying that claim. Mr. Taylor filed an offensive appeal. And then while that case was pending before this Court, he filed two additional motions, another 2255 and a Rule 60B motion attacking the original judgment. As four circuits have held, those motions were second or successive at the time they were filed. But even if not, the district court still lacked jurisdiction over them. For either reason, the district court's order should be affirmed. I'd like to start with the question of second or successive and really frame that discussion with two reference points.  The second being the rules governing 2255 proceedings and, in particular, Rule 12. So starting with the statute. And as we always do, we start with the language of the statute. And the default rule, the plain language, is that a petition is second or successive if it's not the first. And there are recognized exceptions to that default rule, which my colleague outlines in his brief, such as when the initial 2255 is dismissed on purely procedural grounds. Or, say, a pro se defendant is not given notice that his motion is going to be recharacterized as a 2255. But the common theme that runs through those cases is that the initial 2255, for one reason or another, didn't count at all. And it still reinforces the rule, which is once you have one, any further have to comply with 2244B. And it's important to recognize that the Supreme Court has repeatedly told courts that you must construe second or successive and determine whether a filing is second or successive by considering the statutory aims, conserving judicial resources, reducing piecemeal litigation, streamlining federal habeas proceedings. So you're asking this court to, in deciding this issue of first impression, to part company with the Second and the Third and the Sixth Circuits? Your Sixth Circuit is among the four circuits that has taken the government's position. The Fifth, Sixth, Ninth, and Tenth have all adopted the construction that a Rule 60B or second 2255 is second or successive if filed while the initial is pending on appeal. Only the Second and Third Circuit have departed from that. And we think WAB, first of all, predates Gonzales, the Supreme Court decision in Gonzales, which I'll get to in a moment. But we also think the Third Circuit's opinion understates the holding of Gonzales. And this court should join the Fifth, Sixth, Ninth, and Tenth. You don't think the Second Circuit's decision in Ching relies on Supreme Court decisions in Slack v. McDaniel and Martinez v. Villareal? Again, those exceptions are very narrow. And they go to the fact that in those cases, the initial 2255 just didn't count at all. Not that the question should turn on whether the initial 2255 is on appeal or not. And so we think that they've overread those cases and, of course, didn't have an opportunity to take Gonzales into account because it predates Gonzales. And so I think here what's helpful is to go to Rule 12 of the 2255 rules and think about how one of these motions proceeds under the Federal Rules of Civil Procedure, which are imported by Rule 12. And so the defendant files his 2255 motion. Until the time that the district court enters final judgment, he is free to move to amend at any point under Rule 15. But once final judgment is entered, that is a pivotal moment because after that, just like any other litigant, he cannot move to amend that motion, that claim, that petition until the judgment has been reopened, either under Rule 59 with its narrow scope and time limits or under Rule 60. And once we get to Rule 60, we're in the land of Gonzales, where the Supreme Court has told us that a 2255 litigant is not entitled to Rule 60, just like any other litigant. To the extent his motion seeks to add new claims, he is bound to travel first through 2244B. We are not going to allow a defendant under the guise of a Rule 60B motion to get around the second or successive requirements. And so there's no question here that Mr. Taylor's December 2019 motions sought to add new claims. He had one ineffective assistance claim in his initial 2255. He wanted to add three more. And so there's no motion under Gonzales that has to be construed as second or successive. But, counsel, what would you have us make about AEDPA's qualifier that we're looking to see one full opportunity for collateral review? If we allow it to end at the district court determination, are we not running afoul of the purpose of AEDPA of getting that full sum review as held by Centrale and Wahab? And really, the concern that you've raised in your briefs, by holding these in abeyance, we're not necessarily burdening the trial court in as much as we can wait and see what the COA comes down to do. And then it would move, in many cases, these different successive petitions held in abeyance, right? If, Your Honor, if the court followed the third circuit, but not the second. If the court followed the second circuit, the defendant would get to go back to the district court. Even though we all know he now has had that full adjudication, he would get to start over. And I think you're right there. So are you arguing that I think you would have us step away from both the second and the third? But if I could draw some distinction there, because I think your opponent on the other side recognizes that Wahab is the better vehicle for him. Centrale, though, has this, I guess, middle-of-the-road approach. Hold it in abeyance. Look at some of the issues with Rule 15. What's your position on treating them in that fashion and whether we could follow the third as opposed to maybe another circuit? So, Your Honor, what the third circuit does that the second circuit failed to do was recognize the importance of avoiding piecemeal litigation. What the third circuit says is we've found another way to do it. We don't have to say it's second or successive. We can do, as the court just described, we hold it in abeyance. And if it comes back, if it's reversed or vacated as it was in Centrale, then the district court, again, can consider it as a Rule 15 motion just like it could in any case. Which, if I can pause for a moment, is my response to my colleague's claim that the Sixth Circuit, Tenth Circuit rule would somehow foreclose that. If Mr. Taylor had obtained a color and had obtained a reversal from this court, when it went back to the district court, he could file his motion then as a Rule 15 motion. It would not matter that the district court had dismissed the motion in December 2019 while it was outside of its jurisdiction. Once it goes back to the district court, he's free to raise it then. And so what Centrale does is it says, okay, if it goes back, you can construe it as a motion to amend and consider it under those rules. But if it doesn't go back, if you exhaust your remedies, you don't get a COA, or you get a COA and then the denial is affirmed, there's nothing to amend. There is no longer an initial 2255. There's nothing to send back to the district court. And in that scenario, which is where we are now, because in July 2020, this court denied a COA and there was no petition to the Supreme Court. There's nothing for the district court to do. And so to allow it to go back as the Second Circuit would have and for him to be able to proceed now would be anomalous, not just in the context of all 2255s, but all civil litigation at all. There's no scenario where we reward a litigant because they file a motion in the district court while their appeal is pending. And then somehow get the benefit of having filed something that the district court had no jurisdiction over. What he should have done was waited. If his appeal was successful, he files it as a Rule 15. If it's unsuccessful, then just like any other 2255 litigant, it is second or successive. And he has to travel through the process of applying to this court. And then there are bases under which he could achieve the right to file a second or successive. So either way, whether this court deems it second or successive, which we view as the better construction of Gonzalez, or says, no, the district court, it's not second or successive, but should have held it in advance. And I'll just point out one other concern we have about Centro. Not only do we think it doesn't follow Gonzalez, but it's unclear why would the district court be required to hold it in advance? It's one thing to say that the district court, when it gets a motion over which it has no jurisdiction, could hold it in advance. But where would we look to in 2255 or the Rules of Civil Procedure to say that this district court lacked the discretion to dismiss a motion that I believe we all agree it had no jurisdiction over? We could say under Rule 62 that the court should hold it in advance, right? Absolutely, Your Honor. But it's unclear why it would be a requirement. But again, even if the court thought the Third Circuit had the best compromise, in this case at least, we would still prevail. I'd like to turn then to the motion to modify supervised release. As the court knows, we do believe Cordero is binding. And in addition to being bindings from the side, just like the three circuits that it relied on in that decision, there is no room under 3583 to make an attack on the legality and constitutionality. There's an enumerated list of bases you can raise. Those are not amongst them. Congress has set forth the statutory scheme. You can raise such a claim in a Rule 35A. You can raise it on direct appeal. And you can raise it in a 2255. So not only does the text of that statute not permit such a motion, reading it into it would frustrate the statutory scheme as the Ninth Circuit held. As to the claim based on the guideline amendments, Judge Ruiz's question I think went to the heart of it. It appears the district court didn't respond because that issue was not properly before it. Well, here you have a pro se pleading. And there are references to amendments to the sentencing guidelines. So why can't we read that as a claim about the 3553A factors, which would be proper in this motion? I don't think that you can read it that way. I think the question would be does the district court abuse its discretion by not reading it that way. But to the extent this court does read it as being properly raised, then the government certainly agrees the district court didn't respond to that. And so the remedy would be a very narrow remand, which would affirm the dismissal of the 2255s, affirm the denial of the motion on the basis of legality and constitutionality, and simply instruct the district court to address that issue. Which, again, it's a little bit neither here nor there because there's no limit on the number of motions you can bring. But to the extent this court says no, it was properly raised in a fine district court, Mr. Kenney would follow a motion again and include all of the great language that his appellate counsel did in fleshing out what the argument would be. But again, either way, the best case scenario there is a very narrow, limited remand. What's your response to Mr. Kenney's waiver argument? He's correct we didn't address it in our brief, Your Honor. I think Judge Ruiz's questions pointed out all you have to do is look at the order and answer the question of was it an abuse of discretion. But again, to the extent either the court reads the motion as covering it or deems the government to have failed to respond, the limited remand would be, at best, the proper remedy. Unless there's further questions, we ask that the district court's order be affirmed. Thank you. Thank you, Mr. Mindell. Mr. Kenney, you've reserved some time for rebuttal. Thank you, Your Honor. I'd like to touch on the meaning of the policy concerns under the statute and the government's Gonzalez argument. It is, I think, stunning for the government to begin with a purported plain meaning of the word second or successive when under the Supreme Court's guidance it is clear that the statute does not embody a plain meaning. As a direct quote from Panetti, the Supreme Court has said that the phrase second or successive is not self-defining. It takes its full meaning from our case law. We have declined to interpret second or successive as referring to all applications filed second or successively in time. So I agree that if this were a plain meaning rule under an ordinary statute, my client would be in a worse position. But I think there's substantial Supreme Court guidance on that point that says that's not the world we're living in. The second point is on the policy concerns. He seemed to suggest that this court should interpret every component of AEDPA with its policy background in mind. I have two responses. The first is that SLAC indicates that to the extent that the government is concerned about vexatious litigation, that AEDPA has already baked into the cake, as it were, a balance between the policy goals of avoiding vexatious litigation and providing procedural protections to habeas petitioners. SLAC noted that the doctrine of abuse of the writ is live and well, and that despite the ability for potentially Mr. Taylor to get around the second or successive bar, if this court believed or if a district court believed that a petitioner was abusing the writ, it can rely on that doctrine. But I would also like to point out that the policy concerns that have motivated the rule that the government asked you to adopt have simply not been borne out in a circuit that adopted the rule that I would like this court to join with. The one case that the government cites on this point, Fuller from the Second Circuit, shows that the Second Circuit ably and efficiently dealt with the delayed petition. And so if the government is going to ask this court to reach a strained understanding of finality due to supposed policy concerns, it should have to at least demonstrate those policy concerns. I think they simply have not done so throughout this argument. The next point with regards to Gonzales, I think Judge Fletcher's concurrence in Balboina explains this point well. Gonzales certainly says that if a Rule 60b motion is in substance a habeas petition, then it should be treated as a habeas petition. But it does not tell you whether or not that petition is second or successive. And as cases like Slack and Panetti explain, just because it is a petition does not necessarily mean it's a second or successive petition. You have to reach that determination after examining what is actually contained within the petition. Those sorts of judgments simply weren't made here. And so I think I join with the government in saying that this court should look past the Rule 60b label, and it can consider it a habeas petition, and the district court could as well, despite its official nomenclature. But that doesn't actually mean that it's second or successive. That's a separate question. I'd like to close by saying that to the extent that the question was put to this court whether or not we would reward Mr. Taylor for filing something into the district court, we're not asking this court to reward anyone. We're simply asking it to apply it as written. And the common understanding of finality that obtains in any other area of law, which is that until there's been final adjudication on appeal, there's simply not a final adjudication. With regards to the question of whether or not it would be an abuse of discretion for the district court, I think we have two points of response. The first is that it is an abuse of discretion to act as if you believe you lack discretion. That's true in a number of other contexts. And to the extent that really was made here, and this court wanted to say the district court should take one path, but we understand it has discretion, remand is still warranted here because the district court seemed to believe it was mandated to dismiss the case. In closing, I would just simply agree with the government that to the extent they've agreed the 3583 issue is squarely presented and that a limited remand is at least warranted to consider the policy statements, I think we would join with them on that point and ask this court to remand so that the district court can consider those claims in the first instance. That issue is squarely before this court, and there's no reason for this court to not address it. So thank you, Your Honors. All right. Thank you, counsel. And Mr. Kinney, I see that you were appointed by the court to represent Mr. Taylor on this field, and the court thanks you for your service. Thank you.